(No. 58864.—)

GENERAL TELEPHONE COMPANY OF ILLINOIS, Appellee, v. J. THOMAS JOHNSON, Director of Revenue, *et al.*, Appellants.

*Opinion filed October 3, 1984.*

364

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellants.

Vernon C. Maulson, of Bloomington, for appellee.

CHIEF JUSTICE RYAN delivered the opinion of the court:

This appeal concerns the apportionment factor used by a corporation doing business in more than one State which must allocate a portion of its invested capital to Illinois before computing its invested-capital tax liability under our Messages Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 467.1 *et seq.*; Ill. Rev. Stat., 1982 Supp., ch. 120, par. 467.1). Plaintiff, General Telephone Company of Illinois (the taxpayer), brought this taxpayer's protest action on March 5, 1982, against defendants, the Director of the Illinois Department of Revenue and the State Treasurer. The taxpayer sought a judicial determination of whether section 1 of the Messages Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 467.1) authorized the use of combined apportionment, a computation which would reduce the taxpayer's apportionment factor and accordingly reduce its invested-capital tax liability. Following the procedure of "An Act in relation to the payment and disposition of moneys received by officers and employees of the State of Illinois ***" (Ill. Rev. Stat. 1981, ch. 127, par. 170 *et seq.*) ("the Protest Act"), the taxpayer computed the last quarterly installment of its 1981 invested-capital tax and the first installment of its 1982 tax without using combined apportionment. The resulting amounts of tax were paid into a special protest fund. According to the Protest Act (Ill. Rev. Stat. 1981, ch. 127, par. 172), the State Treasurer was to transfer the protest payments in 30 days to the appropriate State revenue fund unless by that time the taxpayer had obtained a temporary restraining order or preliminary injunction against their transfer.

The taxpayer then filed a complaint in the circuit court of Sangamon County which sought an injunction against defendants transferring money from the protest

fund. The complaint requested a refund of taxes paid in excess of amounts which would be due had combined apportionment been used, and it also sought an injunction against further collection of invested-capital taxes computed in any method other than by using combined apportionment. With the complaint, the taxpayer filed a motion for a temporary injunction to prevent the transfer of monies from the protest fund, as well as to bar defendants from taking action against the taxpayer, until further order of the court. The trial court granted the motion for temporary injunction in an order entered on March 10, 1982. This order indicated that, as further installments of its 1982 invested-capital tax became due, the taxpayer should continue paying the installments under protest as required by the Protest Act (Ill. Rev. Stat. 1981, ch. 127, pars. 172, 172a).

After the temporary injunction issued, but before the trial court conducted a hearing on the merits, the General Assembly enacted Public Act 82—1024, "An Act in relation to State taxes." (82d Ill. Gen. Assem., 1982 Sess., 1982 Ill. Laws 2917, secs. 2—4, at 2921, 2923, 2924-25 (Ill. Rev. Stat., 1982 Supp., ch. 120, par. 467.1)). Effective December 15, 1982, this Act amended invested-capital tax provisions so as to prohibit the use of combined apportionment for purposes of the Messages Tax Act, the Gas Revenue Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 467.16 *et seq.*), and the Public Utilities Revenue Act (Ill. Rev. Stat. 1981, ch. 120, par. 468 *et seq.*). Public Act 82—1024 applied retroactively to 1979, the year when invested-capital taxes first were imposed.

In March 1983, the taxpayer moved for summary judgment on the issues of its complaint for injunction. The parties submitted briefs and in May 1983 argued the motion for summary judgment before the trial court. In July, the court concluded that, insofar as it retroactively prohibited combined apportionment, Public Act 82—1024

violated the due process principles of our Federal and State constitutions. An order was entered which granted the taxpayer's motion for summary judgment. The order directed the State Treasurer to transfer from the protest fund to the appropriate State revenue fund the amount of 1981 and 1982 taxes due from the taxpayer as computed using combined apportionment. Money in the protest fund in excess of those taxes was to be refunded to the taxpayer, along with the compound interest that the overpayment had earned. The order stated that if the Treasurer was unable to pay the compound interest in cash immediately, he should issue credit memoranda to the taxpayer for the interest owing. Because the trial court held a statute of this State to be invalid, defendants appealed directly to this court pursuant to our Rule 302(a)(1) (87 Ill. 2d R. 302(a)(1)).

The first issue presented by this appeal is whether Public Act 82—1024, by prohibiting the use of combined apportionment, altered the law regarding invested-capital taxes in such a way that its retroactive effect interferes with the taxpayer's right to due process. To resolve this issue, we must examine the details of this taxpayer's protest suit, as well as the Messages Tax Act language imposing the invested-capital tax, in light of some related developments concerning the Illinois Income Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 1—101 *et seq.*).

Before considering the relevant provisions of our revenue laws, however, it is helpful to recognize several accounting principles that operate in the State income tax context. These principles concern a corporate taxpayer that draws business income from more than one State. In such cases, the amount of income fairly attributable to activities within the taxing State must be discerned before income tax constitutionally may be imposed. (See *Container Corp. of America v. Franchise Tax Board*

(1983), 463 U.S. 159, 164, 77 L. Ed. 2d 545, 552, 103 S. Ct. 2933, 2939.) If a single corporate taxpayer owns two distinct businesses, one located in the taxing State and the other located in another State, the taxpayer is likely able to separately account for the income of each business. In an accurate fashion, he then can allocate business income to the taxing State based on this separate accounting. Dexter, *The Unitary Concept in State Income Taxation of Multistate-Multinational Businesses,* 10 Urb. L. Rev. 181, 181 (1978).

If the tax-paying corporation conducts a single, functionally integrated business in several States, however, separate accounting probably is inadequate for allocating income to a taxing State. Such a concern, frequently called a unitary business, is exemplified by a corporation that owns a centrally managed and marketed hotel chain located in several States. Another example is a corporation engaged in manufacturing which locates central management and plant operations in one State; research and development activities in a second State; and warehousing, marketing, and distribution operations in all 50 States. Many income-taxing States have developed formulas for allocating to their States the appropriate portion of income from these unitary businesses. Thus, what is referred to as "formula apportionment" is available for income allocation in cases where separate accounting does not suffice. *Container Corp. of America v. Franchise Tax Board* (1983), 463 U.S. 159, 165, 77 L. Ed. 2d 545, 553, 103 S. Ct. 2933, 2940; see generally Dexter, *The Unitary Concept in State Income Taxation of Multistate-Multinational Businesses,* 10 Urb. L. Rev. 181, 181-83 (1978); Comment, *State Taxation of Corporate Income: Formulary Apportionment of Income Earned in Interstate Commerce,* 48 Mo. L. Rev. 719, 720-22 (1983).

The Illinois Income Tax Act, which imposes a tax on net income (Ill. Rev. Stat. 1981, ch. 120, par. 2—201), re-

flects these accounting concepts. If a corporation does business in Illinois and one or more other States, section 304(a) of the Act directs this taxpayer to apply formula apportionment when allocating business income to Illinois. The formula-apportionment method prescribed by section 304(a) first requires that the taxpayer compute three factors, which are based on his property, payroll, and sales. The property factor is a fraction whose numerator is the taxpayer's Illinois property, and whose denominator is all of the taxpayer's property. The payroll and sales factors are computed similarly (i.e., Illinois payroll/all payroll; Illinois sales/all sales). Section 304(a) then requires the taxpayer to average the three factors, with the resulting fraction being the taxpayer's "apportionment factor." The section 304(a) apportionment factor is the percentage of the taxpayer's business income that will be taxed in Illinois. (Ill. Rev. Stat. 1981, ch. 120, par. 3—304(a).) Section 304(a) does not limit formula apportionment to cases where the taxpayer's business is unitary. However, if the formula-apportionment method set out in section 304(a) does not fairly represent the corporate taxpayer's Illinois business activity, several other allocation methods, including separate accounting, are available if determined to be reasonable. Ill. Rev. Stat. 1981, ch. 120, par. 3—304(e) (now Ill. Rev. Stat. 1983, ch. 120, par. 3—304(f)).

Beginning in 1969, the first year of the Illinois income tax, corporate taxpayers in this State applied section 304(a) formula apportionment in the manner just described. In 1981, however, Caterpillar Tractor Co. v. Lenckos (1981), 84 Ill. 2d 102, presented this court with the question whether sections 301 and 304(a) of the Income Tax Act authorized a corporate taxpayer to derive its section 304(a) apportionment factor through a method that is known as combined apportionment. Like the ordinary formula apportionment that section 304(a) sets out,

combined apportionment is a method for allocating a fair portion of business income to a taxing State. It was developed for use where a corporate taxpayer is a member of a closely associated group of corporations that collectively engages in a multistate unitary business ("a unitary business group"). When a corporate taxpayer is a member of such a group, ordinary section 304(a) formula apportionment—which considers only the property, payroll, sales, and business income of an individual corporation—often does not fairly depict the amount of the unitary business group's income that has resulted from the individual corporate taxpayer's activities within the taxing State. To resolve this problem, combined apportionment employs a formula which is similar to that set out in section 304(a), but which takes into account the property, payroll, sales, and business income of the entire unitary business group; that is, all of the corporations of the group. *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 108-09.

The language itself of section 304(a) does not authorize combined apportionment. However, corporations that were plaintiffs in *Caterpillar Tractor Co. v. Lenckos* argued that, as members of a unitary business group, they should be allowed under section 304(a) to apply combined apportionment in the following manner: First, the business income of each corporate member of the group would be computed so that the total business income of the group could be derived. Then, to determine the apportionment factor for a group member subject to the Illinois income tax, the property, payroll, and sales factors would be computed by using the individual *group member's* Illinois property, payroll, and sales as numerators, and the *entire unitary group's* property, payroll, and sales as denominators. The average of these three factors would be the group member's apportionment factor. This apportionment factor then would be

applied to the group's total business income to derive the amount of business income on which the group member would pay Illinois income tax. See *Caterpillar Tractor Co. v. Lenckos* (1979), 77 Ill. App. 3d 90, 98, *aff'd* (1981), 84 Ill. 2d 102.

In *Caterpillar*, this court approved the use of combined apportionment under section 304(a) of the Income Tax Act. To reach that decision, we first considered the allocation difficulties that State taxing authorities encounter when a unitary business group member is to be taxed on its income attributable to activities within Illinois. (84 Ill. 2d 102, 116.) According to courts that previously had considered this issue, we noted, the absence of express statutory provision for combined apportionment is not the critical test of whether the method is authorized by a particular State's income tax statute. (84 Ill. 2d 102, 118-20.) After examining the legislative history of our Income Tax Act, as well as the General Assembly's emphasis on fairly determining income tax liability, we concluded that "the use of the combined or unitary apportionment method is authorized under the Act and could be required by the Department [of Revenue] in the case of unitary business groups." 84 Ill. 2d 102, 121.

In February 1981, then, we approved combined apportionment for application to the combined worldwide income of Caterpillar Tractor Company and its 25 subsidiaries. The next year, our General Assembly addressed combined apportionment in an amendment to the Income Tax Act. (Pub. Act 82—1029, 82d Ill. Gen. Assem., 1982 Sess., 1982 Ill. Laws 2946 (Ill. Rev. Stat. 1983, ch. 120, pars. 2—203(b)(2)(J), 3—304(a)(3)(B)(ii), 3—304(e), 15—1501(a)(28)).) The amendment added a provision that expressly requires combined apportionment for taxpayers who, by statutory definition, are unitary business group members. (Ill. Rev. Stat. 1983, ch. 120, pars. 3—304(e), 15—1501(a)(28).) The legislature rejected

worldwide combined apportionment, however, and instead adopted a domestic version which excludes from the unitary business group any member whose activities are carried on primarily outside of the United States. This domestic combined apportionment also strictly limits formulary consideration of foreign dividend income, as well as sales between United States and foreign members of the same unitary group. (Ill. Rev. Stat. 1983, ch. 120, pars. 2—203(b)(2)(J), 3—304(a)(3)(B)(ii), 15—1501(a)(28)).) Effective December 15, 1982, this amendment to the Income Tax Act is applicable to tax years ending on or after December 31, 1982.

We turn now from the Income Tax Act to the invested-capital provisions of the Messages Tax Act. To calculate the invested-capital tax, a taxpayer determines the book value of its capital and multiplies this figure by an apportionment factor. The resulting amount is subject to an annual tax of .8%. Here, the apportionment factor apparently is intended to isolate that amount of invested capital which is devoted to the business of message transmission in Illinois. See Ill. Rev. Stat. 1981, ch. 120, pars. 467.1, 467.2a.1.

When the legislature imposed the invested-capital tax, drafters selected the section 304(a) apportionment factor from the Income Tax Act for use as the apportionment factor in computing taxable invested capital. Thus, section 1 of the Messages Tax Act defines taxable invested capital in the following way:

" 'Invested capital' means that amount equal to (i) the average of the balances at the beginning and end of each taxable period of the taxpayer's total stockholder's equity and total long-term debt, less investments in and advances to all corporations, as set forth on the balance sheets included in the taxpayer's annual report to the Illinois Commerce Commission for the taxable period; (ii) *multiplied by a fraction determined under Sections 301*

*and 304(a) of the 'Illinois Income Tax Act' and reported on the Illinois income tax return for the taxable period ending in or with the taxable period in question."* (Emphasis added.) Ill. Rev. Stat. 1981, ch. 120, par. 467.1.

The legislature imposed the invested-capital tax in 1979, 10 years after it added the Income Tax Act, but 2 years before we construed section 304(a) as authorizing combined apportionment for income tax purposes in *Caterpillar*. Thus, at the time that the legislature used section 304(a) to define taxable invested capital, corporate-income taxpayers were computing the section 304(a) apportionment factor using figures that reflected only the individual taxpayer's property, payroll, and sales. Accordingly, when section 1 of the Messages Tax Act called for further use of the section 304(a) apportionment factor, there appeared to be no question concerning how taxpayers would compute that factor. However, after this court's *Caterpillar* decision, the question arose whether the income tax apportionment factor—for taxpayers who now would use combined apportionment— still was the proper figure for use in computing invested-capital tax liability. It was to obtain a court ruling on this question that General Telephone Company of Illinois, the taxpayer in the case at bar, instituted this tax-protest action.

As an Illinois corporation engaged in the business of transmitting messages, the taxpayer is taxed under both the Illinois Income Tax Act and the Messages Tax Act. The Messages Tax Act imposes both the invested-capital tax (Ill. Rev. Stat. 1981, ch. 120, par. 467.2a.1), the subject of this appeal, and a gross-receipts tax (Ill. Rev. Stat. 1981, ch. 120, par. 467.2), which is not at issue in this case.

The taxpayer routinely filed its income-tax and invested-capital tax returns for the years 1979 and 1980, having computed the section 304(a) apportionment factor

without the use of combined apportionment. However, after our decision in *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, the taxpayer amended its 1979 and 1980 income tax returns. As a member of a closely related group of corporations, the taxpayer changed the returns to reflect its use of the combined apportionment method as approved for income tax purposes in *Caterpillar*.

With respect to tax year 1981, the taxpayer again planned to utilize combined apportionment for income tax purposes, and it also hoped to use the apportionment factor calculated with combined apportionment to compute taxable invested capital. If used in the invested-capital tax computation, combined apportionment would vastly reduce the taxpayer's invested-capital tax burden. Figures presented to this court reflect that, when computed without combined apportionment, the taxpayer's 1981 invested-capital tax totals $3,875,858. Computed with the use of combined apportionment, however, 1981 invested-capital tax liability drops to $112,268. Similarly, combined apportionment reduces 1982 invested-capital tax liability from $3,980,945 to approximately $115,312.

Before filing its final 1981 invested-capital tax return, the taxpayer spoke to representatives of the Illinois Department of Revenue concerning the propriety of using the income tax apportionment factor derived through combined apportionment to compute taxable invested capital. The taxpayer noted that section 1 of the Messages Tax Act required it to use the "fraction determined under Section 301 and 304(a) of the 'Illinois Income Tax Act' and reported on the Illinois income tax return." (Ill. Rev. Stat. 1981, ch. 120, par. 467.1.) In addition, the invested-capital tax-return form directed the taxpayer to "[m]ultiply line 7 by the Illinois apportionment factor as shown on IL—1120 [the income tax return] for tax year ending 1981." The Department had

promulgated no regulations to provide further instruction on this subject. When presented with the taxpayer's question, Department of Revenue representatives declined to comment. Nor would they agree to waive interest or penalties that would accrue if the taxpayer used combined apportionment now and paid the lower tax but later was assessed a deficiency, because the Department had deemed combined apportionment improper for determining invested-capital tax liability. At this point, the taxpayer opted to proceed under the Protest Act to obtain a court decision on this question with respect to tax years 1981 and 1982.

While the taxpayer awaited that court decision, the legislature enacted Public Act 82—1024, which amended the definition of invested capital to retroactively preclude the use of combined apportionment for invested capital tax purposes. After the taxpayer had paid 1981 and 1982 taxes under protest and initiated this lawsuit, Public Act 82—1024 added the following language to the section 1 definition of invested capital:

> "However, notwithstanding the income tax return reporting requirement stated above, beginning July 1, 1979, no taxpayer's denominators used to compute the sales, property or payroll factors under subsection (a) of Section 304 of the Illinois Income Tax Act shall include payroll, property or sales of any corporate entity other than the taxpayer for the purposes of determining an allocation for the invested capital tax. This amendatory Act of 1982 is not intended to and does not make any change in the meaning of any provision of this Act, it having been the intent of the General Assembly in initially enacting the definition of 'invested capital' to provide for apportionment of the invested capital of each company, based solely upon the sales, property and payroll of that company." (Ill. Rev. Stat., 1982 Supp., ch. 120, par. 467.1.)

In that it applies retroactively to 1979, this amendment purports to govern the issue that the taxpayer had

raised in its protest action with respect to tax years 1981 and 1982. Because of this retroactive effect, the trial court regarded the amendment as an unconstitutional interference with the taxpayer's due process rights.

If Public Act 82—1024 indeed substantively changed tax liability on a retroactive basis, the change must meet due process requirements in order to be valid. (See, *e.g., Continental Illinois National Bank & Trust Co. v. Zagel* (1979), 78 Ill. 2d 387, 414-15; *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 50-52.) On the other hand, if the amendment merely clarified the law as it existed before, then no substantive change occurred that would raise a due process issue.

The taxpayer in this case maintains that, before amendment, section 1 of the Messages Tax Act clearly required the taxpayer who derived its income tax apportionment factor through combined apportionment to use that same apportionment factor when it calculated taxable invested capital. Therefore, the taxpayer contends, Public Act 82—1024 imposed a substantial change in legislative policy. The taxpayer concludes that retroactive operation of this change violates due process principles. Defendants take the opposite view, which is based on their theory that section 1 never authorized the use of an apportionment figure derived through combined apportionment. *Caterpillar,* they explain, in no way affected invested-capital tax computations.

Focusing on the language of section 1 of the Messages Tax Act as it appeared before the amendment in question, we note that it clearly directs the taxpayer to compute invested-capital taxes using the section 304(a) apportionment factor from its income tax form. After *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, the Messages Tax Act reference to section 304(a) would seem to indicate that the income tax apportionment fac-

tor must be used regardless of whether it was calculated with combined apportionment. Our *Caterpillar* decision, however, was closely tied to the legislative history of the Income Tax Act and to the difficulties of apportioning the income of a unitary business group. *Caterpillar* did not require that this court address these same considerations with regard to the invested-capital tax. Nor, for that matter, does the *Caterpillar* opinion contain any reference whatsoever to the invested-capital tax. So while *Caterpillar* might appear to authorize combined apportionment for the invested-capital tax as well as the income tax, the rationale of that decision is in no way appropriate to support a judicial construction of the invested-capital tax provisions. On the other hand, if income tax section 304(a) is read without consideration of *Caterpillar*, its plain language does not authorize combined apportionment. Based on these considerations, we conclude that section 1 became susceptible of two interpretations after the *Caterpillar* decision. The section ambiguously lends itself both to the taxpayer's view, that invested capital must be apportioned using the income tax apportionment factor even if combined apportionment was used to derive that factor, and also to defendants' view, that combined apportionment never was authorized for invested-capital tax purposes.

It is possible that we could resolve this ambiguity by examining extrinsic aids, such as the legislative history of the invested-capital tax provisions or the circumstances leading to their adoption. However, such an inquiry is unnecessary. Even if we were to find that the legislature originally intended the use of combined apportionment by taxpayers computing invested-capital tax liability, so that Public Act 82—1024 indeed changed tax liability retroactively, we still regard the amendment as a permissive exercise of legislative power.

A retroactive tax measure does not necessarily vio-

late the due process provisions of either the Illinois or the Federal constitution (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, sec. 2). A court must consider the nature of a tax measure and the circumstances leading to its adoption before the court may determine "that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation." (*Welch v. Henry* (1938), 305 U.S. 134, 147, 83 L. Ed. 87, 93, 59 S. Ct. 121, 126; see also *United States Trust Co. v. New Jersey* (1977), 431 U.S. 1, 17 n.13, 52 L. Ed. 2d 92, 106 n.13, 97 S. Ct. 1505, 1515 n.13; *Continental Illinois National Bank & Trust Co. v. Zagel* (1979), 78 Ill. 2d 387, 414-15.) As the factors that influence courts making this determination, commentators commonly cite the extent that the taxpayer changed its position in reasonable reliance on the prior law, whether the taxpayer had an opportunity to anticipate and avoid the loss resulting from the retroactive change, and the element of surprise (or degree of foreseeability) attributable to the enactment. See, *e.g.*, Bryant, *Retroactive Taxation: A Constitutional Analysis of the Minimum Tax on IDCs*, 36 Okla. L. Rev. 107, 108-14 (1983); Stimson, *Retroactive Application of Law—A Problem in Constitutional Law*, 38 Mich. L. Rev. 30, 37-44 (1939); Comment, *Setting Effective Dates for Tax Legislation: A Rule of Prospectivity*, 84 Harv. L. Rev. 436, 438-42 (1970). See also J. Nowak, R. Rotunda & J. Young, Constitutional Law 431-32 (1978).

Public Act 82—1024, like other statutes, is presumed to be a valid enactment, and the burden here rests on the taxpayer who challenges its validity. (*Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 303.) However, the taxpayer does not allege that it changed its position in reliance on the belief that combined apportionment was authorized for invested-capital tax computations. There is no evidence that the taxpayer changed its fiscal plans or reorganized the distribution of its property, payroll,

and sales to take advantage of combined apportionment during the 22 months between our *Caterpillar* decision and the enactment of Public Act 82—1024. Given the refusal of Department of Revenue representatives to comment on the taxpayer's proposed use of combined apportionment, as well as the fact that this court in *Caterpillar* did not address invested-capital tax computations, the taxpayer must concede that it could foresee at least some possibility that combined apportionment would be disapproved for tax years 1981 and 1982—by the court deciding the taxpayer's protest suit, if not by legislative action. Public Act 82—1024 did not unfairly surprise the taxpayer. Rather, it in effect insured that the taxpayer would continue to compute invested capital taxes as it routinely had done before the *Caterpillar* decision. We do not consider this result to be so harsh and oppressive as to interfere with due process guarantees.

The taxpayer contends that even if Public Act 82—1024 is unconstitutional for no other reason, the length of the retroactive period under that Act is impermissible. Effective December 15, 1982, and applicable beginning August 14, 1979, the period of retroactivity technically is 3½ years. Defendants maintain, however, that the true retroactive period is only the time between our *Caterpillar* decision and the effective date of Public Act 82—1024, a period of 22 months. According to defendants, it only was during this shorter period that the taxpayer considered combined apportionment to be proper for computing invested-capital taxes.

The period of retroactivity is one factor to consider in the general determination of whether a retroactive tax measure violates due process. If this factor renders the enactment unduly harsh and oppressive, then the enactment is invalid. (*Continental Illinois National Bank & . Trust Co. v. Zagel* (1979), 78 Ill. 2d 387, 414-15.) The taxpayer here bears a substantially greater tax burden

when invested-capital taxes are computed without combined apportionment. If imposing this greater burden truly constituted an unexpected change in tax liability with effects reaching back 3½ years, then the constitutionality of Public Act 82—1024 indeed would be questionable. Given the circumstances of this case, however, we agree with defendants and consider the practical effects of Public Act 82—1024 to reach back only to the time of our *Caterpillar* decision. Before that decision, the taxpayer itself concedes that it routinely paid the greater tax. Even during that 22-month period, the taxpayer had notice that the larger tax might be due. Under these circumstances, we do not consider the period of retroactivity under Public Act 82—1024 to be impermissible.

The taxpayer also argues that Public Act 82—1024 interferes with its right to recover money due from the protest fund. According to the taxpayer, the Act allows defendants to confiscate tax monies which were overpaid and subject to refund under the law as it existed prior to amendment. To support this position, the taxpayer cites *Hogan v. Bleeker* (1963), 29 Ill. 2d 181, and *People ex rel. Allied Bridge & Construction Co. v. McKibbin* (1942), 380 Ill. 63, both of which concerned a statute or regulation that destroyed a vested property right. In *Hogan*, the plaintiff brought suit in 1961 to foreclose the liens of some special assessments that were purchased in 1951. The circuit court entered a decree foreclosing the liens. The appellate court reversed and based its decision on a 1957 amendment which required that suit be brought to foreclose the statutory liens in question within five years after the special assessment was purchased. Before the amendment, such a suit could be brought at any time. (*Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 182-83, 185.) This court held that the liens were constitutionally protected property rights. If construed

to be retroactively applicable, the amendment would destroy these vested rights and therefore be constitutionally impermissible. To avoid this result, the court construed the amendment to be of prospective application only. 29 Ill. 2d 181, 188-91.

In *People ex rel. Allied Bridge & Construction Co. v. McKibbin* (1942), 380 Ill. 63, the Director of Finance had granted credit memoranda to plaintiffs, pursuant to an order of this court, for occupation taxes erroneously paid. In another case, this court had held that such credit memoranda were assignable. Sometime after receiving the memoranda, plaintiffs wished to transfer or assign them to another taxpayer, but the Director of Finance refused to allow the transfer. (380 Ill. 63, 64-66.) The court held that the credit memoranda which had been issued to the taxpayer as ordered by the court were assignable when issued. These rights under the credit memoranda were vested and could not be affected by subsequent legislation or rules of the department.

We regard neither of these cases as authority for the taxpayer's claim that Public Act 82—1024 destroyed its vested right to refund. While the legislature may not interfere with a vested right, legislation may apply retroactively where no vested right is affected. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390-91.) Here, the taxpayer has failed to demonstrate that its right to refund is vested. When the legislature enacted Public Act 82—1024, the circuit court had not reached the merits of the taxpayer's protest action in which a refund was sought. As explained previously, we consider section 1 of the Messages Tax Act to be unclear regarding the use of combined apportionment. However, even assuming clear authorization of combined apportionment for invested-capital tax purposes under the Messages Tax Act as it stood before amendment, a taxpayer has no vested right in the continuance of a taxing

statute. (*Schlenz v. Castle* (1981), 84 Ill. 2d 196, 208.) As for the fact that the taxpayer already had initiated its protest action when the legislature enacted Public Act 82—1024, it is settled that new legislation may be applied in pending cases. In the absence of legislative intent to the contrary, a court is to apply the law in effect at the time of decision, unless to do so results in manifest injustice. *Bradley v. School Board* (1974), 416 U.S. 696, 711-12, 40 L. Ed. 2d 476, 488, 94 S. Ct. 2006, 2016; *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 205; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 570-71.

In addition to its due process claims, the taxpayer maintains that, by enacting Public Act 82—1024, the legislature overruled a decision of this court in contravention of the separation-of-powers doctrine (Ill. Const. 1970, art. II, sec. 1). The taxpayer theorizes that Public Act 82—1024 retroactively applies new statutory language to nullify the effects of *Caterpillar*, in which we approved the use of combined apportionment for income tax purposes.

Regarding the effects of the separation-of-powers doctrine, this court has explained that "the General Assembly cannot constitutionally overrule a decision of this court by declaring that an amendatory act applies retroactively to cases decided before its effective date." (*Roth v. Yackley* (1979), 77 Ill. 2d 423, 429; see also *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 202-03; *Schlenz v. Castle* (1981), 84 Ill. 2d 196, 207-08; *Worley v. Idleman* (1918), 285 Ill. 214, 220-21.) The taxpayer's argument that this principle operates to invalidate Public Act 82—1024 is unpersuasive. As stated before, at the time that the legislature enacted Public Act 82—1024, the circuit court had not addressed the taxpayer's question concerning combined apportionment and the invested-capital tax. The taxpayer had not obtained a judgment on the issue, so the amendment cannot be said to unduly in-

fringe on the powers of the judiciary. Public Act 82—1024 does not affect either our *Caterpillar* holding concerning income taxes or the income tax liability of the parties to the *Caterpillar* lawsuit. For these reasons we disagree that the amendment is inconsistent with the separation-of-powers doctrine.

Defendants raise several issues concerning the interest earned by sums that the taxpayer paid into the protest fund. Defendants contend that the trial court improperly ordered them to pay compound interest to the taxpayer on the amounts to be refunded. They also claim that the trial court lacked authority to order the issuance of credit memoranda to repay the interest. Because we uphold the validity of Public Act 82—1024 and reverse the trial court with respect to the refunds it ordered, we do not reach these issues relating to interest. This case is remanded to the circuit court of Sangamon County for further proceedings in accordance with this opinion.

*Reversed and remanded.*