SIXTH DIVISION   

DECEMBER 23, 1999

No. 1-98-2309

HARTMARX CORPORATION AND SUBSIDIARIES, ) APPEAL FROM THE

) CIRCUIT COURT

Plaintiff-Appellant, ) OF COOK COUNTY.

)

v. )

)

GLEN BOWER, DIRECTOR, DEPARTMENT OF )

REVENUE OF THE STATE OF ILLINOIS, ) HONORABLE

) JOANNE L. LANIGAN,

Defendant-Appellee. ) JUDGE PRESIDING.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Hartmarx Corporation and Subsidiaries (Hartmarx) appeals an order of the circuit court of Cook County affirming a decision by the Illinois Department of Revenue (Department).  The Department ruled that sales shipped from Illinois by a member of Hartmarx's unitary business group to purchasers located outside Illinois should be "thrown back" to Illinois for inclusion in the numerator of the taxpayer's combined Illinois sales factor, where the taxpayer was not separately subject to tax in the destination State.  The Department also assessed penalties for Hartmarx's failure to include such sales in its taxable income.

The record on appeal shows that Hartmarx is a Delaware corporation with its principal place of business in Illinois.  Hartmarx is part of a unitary business group engaged in the apparel industry nationwide.  The members of the unitary business group include (but are not limited to) Hart, Schaffner & Marx (HS&M) and Fashionaire Apparel, Inc. ("Fashionaire").  Section 502(e) of the Illinois Income Tax Act (Tax Act) provides in part as follows:

"(e) For taxable years ending on or after December 31, 1985, and before Decem­

ber 31, 1993, taxpayers that are corporations *** that are members of the same unitary business group may elect to be treated as one taxpayer for purposes of any original return, amended return which includes the same taxpayers of the unitary group which joined in the election to file the original return, extension, claim for refund, assessment, collection and payment and determination of the group's tax liability under this Act."  35 ILCS 5/502 (West 1996). 

Hartmarx made this statutory election in each of the taxable years 1986-91.  

In calculating corporate income tax pursuant to the Tax Act,  an entity conducting business in more than one state uses a three-factor formula to determine what proportion of income is attributable to the various States.  35 ILCS 5/304(a) (West 1996).  Specifically, the statute provides that:

"If a person other than a resident derives business income from this State and one or more other states, then, except as otherwise provided by this Section, such person's business income shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the sum of the property factor (if any), the payroll factor (if any) and 200% of the sales factor (if any), and the denominator of which is 4 reduced by the number of factors other than the sales factor which shall have a denominator of zero ***.

* * * * *

(3) Sales Factor.

(A) The sales factor is a fraction, the numerator of which is the total sales of the person in this State during the taxable year, and the denominator of which is the total sales of the person everywhere during the taxable year.

(B) Sales of tangible personal property are in this State if:

(i) The property is delivered or shipped to a purchaser, other than the United States government, within this State ***; or

(ii) The property is shipped from an office, store, warehouse, factory or other place of storage in this State and *** the person is not taxable in the state of the purchaser."  35 ILCS 5/304(a)(3)(A),(B) (West 1996).

Section 304 also provides in part as follows:

"(e) Combined apportionment.  Where 2 or more persons are engaged in a unitary business ***, a part of which is conducted in this State by one or more members of the group, the business income attributable to this State by any such member or members shall be apportioned by means of the combined apportionment method."  35 ILCS 5/304(e) (West 1996).

During the tax years 1986-91, HS&M and Fashionaire sold goods  shipped from Illinois to customers in states where HS&M and Fashionaire were not subject to taxation, but other members of the unitary business group were subject to taxation.  Hartmarx did not include such sales in the numerator of the unitary business group's sales factor.

Following an audit of Hartmarx's books and records, the  Department determined that Hartmarx improperly excluded the aforementioned sales from the numerator of the unitary business group's sales factor.  The Department ruled that, under the "throwback rule" embodied in section 304(a)(3)(B), Illinois was authorized to include in the sales factor of the apportionment formula those sales of property shipped from Illinois to purchasers in States where that specific subsidiary was not taxable.  Thus, the Department issued notices of deficiencies to the unitary business group for the tax years 1986-90, proposing assessments of $900,040 in tax and $102,820 in penalties.  Hartmarx timely filed protests of these determinations.

Following a consolidated hearing on the protests, the administrative law judge (ALJ) recommended that the notices of deficiencies be affirmed, except that sales made by HS&M and Fashionaire to customers in States where the sellers were taxable would be excluded and that the penalty for tax year 1986 would be abated.  The Director of the Department accepted the ALJ's recommendation.

Hartmarx then sought administrative review of the ruling, arguing that the throwback of these foreign destination sales was inappropriate, because other members of the unitary business group were taxable in those jurisdictions.  The circuit court affirmed the Department, ruling that this court's decisions in 
Beatrice Companies, Inc. v. Whitley
, 292 Ill. App. 3d 532, 685 N.E.2d 958 (1997), and 
Dover Corp. v. Department of Revenue
, 271 Ill. App. 3d 700, 648 N.E.2d 1089 (1995), supported the Department's position.  Hartmarx now appeals.

I

The standard for reviewing a final administrative decision is governed by the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 1996)), which provides that our review extends to all questions of law and fact presented by the entire record.  735 ILCS 5/3-110 (West 1996).  The factual determinations of an administrative agency are deemed 
prima facie
 true and correct.  735 ILCS 5/3-110 (West 1996).  An agency's interpretation of the law it administers must be afforded substantial weight.  
Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n
, 95 Ill. 2d 142, 152, 447 N.E.2d 295, 300 (1983).  Courts recognize that agencies can make informed judgments upon the issues, based upon their experience and expertise.  
Illinois Consolidated Telephone Co.
, 95 Ill. 2d at 153, 447 N.E.2d at 300.  However, an agency's conclusions of law ultimately are reviewed 
de novo
.  
Envirite Corp. v. Illinois Environmental Protection Agency
, 158 Ill. 2d 210, 214, 632 N.E.2d 1035, 1037 (1994).

II

The question on appeal is whether the Department properly applied the throwback rule to sales of goods by HS&M and Fashionaire that were shipped from Illinois to customers in other states where HS&M and Fashionaire were not subject to taxation, but where other members of the Hartmarx unitary business group were subject to taxation.  When applied to a corporation, the term unitary business group describes a corporation with interrelated subsidiaries located in various States and countries.  Subsidiaries in a unitary business group are so interdependent, however, that it becomes relatively impossible for one State to determine the net income generated by a particular subsidiary's activities within the State.  
Caterpillar Tractor Co. v. Lenckos
, 84 Ill. 2d 102, 116, 417 N.E.2d 1343, 1351 (1981).  The difficulty in determining the portion of income attributable to a particular State translates into difficulty in  apportioning income for purposes of taxation.
  See 
Caterpillar
, 84 Ill. 2d at 116, 417 N.E.2d at 1351. 

The Uniform Division of Income for Tax Purposes Act (UDITPA), adopted in 1957 as a model act, sets forth guidelines for apportioning income when a business entity conducts business in different States.  7A U.L.A. 331 (1985).  UDITPA was designed to enable States to apportion the income of a multistate corporation based upon the distribution of the corporation's property, sales, and payroll.  UDITPA was incorporated into article IV of the Multistate Tax Compact (MTC), which became effective in Illinois in 1967.  
Caterpillar
, 84 Ill. 2d at 118, 417 N.E.2d at 1352.  The Illinois Income Tax Act became effective in August 1969.  
Caterpillar
, 84 Ill. 2d at 117, 417 N.E.2d at 1351.  Illinois withdrew from the Multistate Tax Commission and repealed the MTC in 1975, but an examination of various relevant provisions of UDITPA, the MTC, and the Illinois Income Tax Act shows that the language in each pertaining to the apportionment of business income is very similar and in some instances virtually identical.  
Caterpillar
, 84 Ill. 2d at 120-21, 417 N.E.2d at 1353.  Indeed, the official commentary on the Tax Act states that the rules for apportionment under sections 301 through 307 of the Act embody the principles underlying article IV of the MTC, which is UDITPA.  
Caterpillar
, 84 Ill. 2d at 121, 417 N.E.2d at 1353.

Section 304 of the Tax Act follows UDITPA in providing that when an entity conducts business in more than one State, a three-factor formula (property, payroll and sales) is used to determine what proportion of income is attributable to the various States.  Section 304 also provides that the business income attributable to this State by any member or members of a unitary business group partially conducting business in Illinois shall be apportioned by means of the combined apportionment method.  35 ILCS 5/304(e) (West 1996).  The combined apportionment formula is calculated as follows:

"[T]o determine the apportionment factor for a group member subject to the Illinois income tax, the property, payroll, and sales factors would be computed using the individual group member's Illinois property, payroll, and sales as numerators, and the entire unitary group's property, payroll, and sales as denominators.  The average of these three factors would be the group member's apportionment factor.  This apportionment factor then would be applied to the group's total business income to derive the amount of business income on which the group member would pay Illinois income tax."  
General Telephone Co. of Illinois v. Johnson
, 103 Ill. 2d 363, 371-72, 469 N.E.2d 1067, 1071 (1984).
(footnote: 1)
The purpose of the combined apportionment formula is "to permit the fair determination of the portion of business income that is attributable to the business activity in Illinois by the reporting member of the unitary group."  
Caterpillar
, 84 Ill. 2d at 121, 417 N.E.2d at 1353.

The throwback rule embodied in section 304(a)(3)(B)  provides that sales of tangible personal property which occur in States where the group member is not taxable are deemed to be sales "in this State" and thus apportioned to Illinois.  35 ILCS 5/304(a)(3)(B) (West 1996).  As the trial court noted in this case, this court has twice ruled that the Department properly applied the throwback rule to sales of goods by members of a unitary business group that were shipped from Illinois to customers in other states where those members of the group were not subject to taxation, but where other members of the unitary business group were subject to taxation in those destination States.  
Beatrice Companies, Inc.
, 292 Ill. App. 3d at 532, 685 N.E.2d at 958; 
Dover Corp.
, 271 Ill. App. 3d at 700, 648 N.E.2d at 1089.  This court concluded that failure to apply the throwback rule in the manner advanced by the Department would result in a "nowhere" tax on the Illinois sales.  
Beatrice Companies, Inc.
, 292 Ill. App. 3d at 538, 685 N.E.2d at 962.

On appeal, Hartmarx contends that 
Dover
 and 
Beatrice
 are distinguishable because neither involved an interpretation of section 502(e) of the Tax Act, which permits the members of a unitary business group to elect to be treated as a single taxpayer.  Given this argument, a brief recap of the history of this provision of the Tax Act may be useful.

In 1984, the legislature passed Public Act 83-1289, which provided in part as follows:

"For taxable years ending on or after December 31, 1985, and before December 31, 1993, taxpayers that are corporations (other than Subchapter S corporations) having the same taxable year and that are members of the same unitary business group may elect to be treated as one taxpayer for purposes of any original return, amended return which includes the same taxpayers of the unitary group which joined in the election to file the original return, extension, claim for refund, assessment, collection and payment of the sum of what would otherwise be their separate tax liabilities."  P.A. 83-1289 (approved Aug. 31, 1984).

The Department proposed a regulation interpreting this legislation, which included an example indicating that a member of a unitary business group taxable in Illinois, but not taxable in the destination State of shipped goods, 
would not
 have sales to the destination State thrown back to Illinois.

However, before Public Act 83-1289 became effective, the legislature passed Public Act 84-221, which is incorporated in section 502(e) of the Act and provides in part as follows:

"For taxable years ending on or after December 31, 1985, and before December 31, 1993, taxpayers that are corporations (other than Subchapter S corporations) having the same taxable year and that are members of the same unitary business group may elect to be treated as one taxpayer for purposes of any original return, amended return which includes the same taxpayers of the unitary group which joined in the election to file the original return, extension, claim for refund, assessment, collection and payment and determination of the group's tax liability under this Act."  See 35 ILCS 5/502(e) (West 1996). 

The Department then proposed and promulgated regulations interpreting this legislation, which included an example showing that a member of a unitary business group taxable in Illinois, but not taxable in the destination State of shipped goods, 
would
 have sales to the destination State thrown back to Illinois.  See 86 Ill. Adm. Code § 100.5270(b).  

Hartmarx notes that section 502(e) was not at issue in 
Dover
 due to the tax years involved in that case.  We also note that 
Beatrice
 does not state which tax years were at issue.

Nevertheless, the enactment of section 502(e) does not require the conclusion that the Department's application of the throwback rule was improper.  Although section 502(e) allowed a unitary business group to elect to be treated as one taxpayer for purposes of any determination of the group's tax liability, section 304(e) requires that when a member of a unitary business group does business in Illinois, business income attributable to Illinois by any such members must be apportioned using the combined apportionment method.  The combined apportionment method requires the calculation of each individual group member's Illinois sales.  Illinois sales include sales shipped from Illinois to States where "the person is not taxable in the state of the purchaser."  35 ILCS 5/304(a)(3)(B)(ii) (West 1996).

Hartmarx's argument assumes that when a unitary business group elects treatment as a single "taxpayer" under section 502(e), the word "person" in section 304(a)(3) should be read as referring to a single "taxpayer."  Although the UDITPA version of the throwback rule uses the word "taxpayer" instead of the word "person," our Tax Act does the opposite.  See 7A U.L.A. 331 (1985)(UDITPA § 16(b)(2)).  Section 502(e) does not require a unitary business group to be treated as a single "person."  Indeed, the Tax Act defines a unitary business group as a group of persons.  35 ILCS 5/1501(a)(27) (West 1996).  Moreover, after considering sections 304(a)(3)(B)(ii) and 1501(a)(27), the 
Beatrice
 court concluded that construing the term "person" as a plural noun referring to a unitary business group would be manifestly incompatible with legislative intent.  
Beatrice Companies, Inc.
, 292 Ill. App. 3d at 536-37, 685 N.E.2d at 961-

625.  In sum, reading the Tax Act as a whole, Hartmarx's section 502(e) argument is unpersuasive. 

III

Hartmarx argues that the prevention of "nowhere sales" does not justify the application of the throwback rule in this case.  Our supreme court has stated that the purpose of article 3 of the Tax Act is to assure that 100%, and no more or no less, of the business income of a corporation doing multistate business is taxed by the States having jurisdiction to tax it.  
GTE Automatic Electric, Inc. v. Allphin
, 68 Ill. 2d 326, 335, 369 N.E.2d 841, 845 (1977).  "Overlaps" and "gaps" in taxation are to be avoided.  
GTE Automatic Electric, Inc.
, 68 Ill. 2d at 339, 369 N.E.2d at 847.  However, full apportionment cannot be achieved outside constitutional parameters.  
Northwest Airlines, Inc. v. Dept. of Revenue
, 295 Ill. App. 3d 889, 894, 692 N.E.2d 1264, 1268 (1998).  In 
Northwest Airlines
, this court distinguished 
GTE Automatic Electric
 on the ground that the airlines' activities at issue -- conducting flights over Illinois that did not originate or terminate in Illinois -- lacked 
any
 constitutional nexus to Illinois that would justify apportioning revenue generated by such transportation to Illinois.  
Northwest Airlines
, 295 Ill. App. 3d at 894, 692 N.E.2d at 1268.

As noted earlier, the purpose of the combined apportionment formula is "to permit the fair determination of the portion of business income that is attributable to the business activity in Illinois by the reporting member of the unitary group."  
Caterpillar
, 84 Ill. 2d at 121, 417 N.E.2d at 1353.  Hartmarx argues that there is no evidence that the income from the sales at issue is attributable to anything but sales activities of HS&M and Fashionaire outside Illinois.  This argument overlooks that apportionment focuses on "business activity," a concept capable of encompassing more than "sales activity" as narrowly defined by Hartmarx.  Hartmarx may believe that shipping is not a part of "sales activity," but its customers would likely disagree with that definition.  Moreover, the Tax Act defines sales of tangible personal property as "in this State" if the property is shipped from an office, store, warehouse, factory or other place of storage in this State and the person is not taxable in the State of the purchaser.

Hartmarx claims its argument is consistent with the United States Supreme Court's due process and commerce clause cases holding that a State may not tax value earned outside its borders.  
E.g.
, 
Mobil Oil Corp. v. Commissioner
, 445 U.S. 425, 63 L. Ed. 2d 510, 100 S. Ct. 1223 (1980).  However, unitary businesses should be taxed on the basis of economic activity, not the form of the business.  
Mobil Oil
, 445 U.S. at 440, 63 L. Ed. 2d at 523, 100 S. Ct. at 1233.  This is why combined reporting is applicable to unitary businesses -- to prevent a triumph of form over substance.  
Citizens Utilities Co. of Illinois v. Dept. of Revenue
, 111 Ill. 2d 32, 40, 488 N.E.2d 984, 987 (1986).  If the economic activity of HS&M and Fashionaire is not taxable in the destination States, it is taxable in the shipping State of Illinois using the throwback rule.

Hartmarx's reliance on cases such as 
Mobil Oil
 and 
Northwest Airlines
 suggests an attack on the constitutionality of the throwback rule in this case.  The throwback rule is designed to ensure that the taxpayer does not receive a windfall; constitutional challenges to throwback rules have been rejected in a number of other States. I J. Hellerstein & W. Hellerstein, State Taxation: Corporate Income and Franchise Taxes, ¶ 9.21[1][b] (2d ed. 1993).  However, this court need not decide this issue, as Hartmarx has not argued that the throwback rule is unconstitutional on its face or as applied in this case.  Thus, any such argument is waived.

IV

Hartmarx argues that the Department's regulation regarding the throwback rule for a unitary business group is invalid.  The Department is authorized to make, promulgate and enforce such reasonable regulations relating to the administration and enforcement of the Tax Act as it may deem appropriate.  35 ILCS 5/1401(a) (West 1996).  Indeed, the Department was required to promulgate regulations relating to the election and later requirement for unitary business groups to be treated as one taxpayer under section 502(e) of the Tax Act.  See, 
e.g.
, 35 ILCS 5/1401(b) (West 1996).  However, administrative rules can neither limit nor extend the scope of a statute.  
Canteen Corp. v. Dept. of Revenue
, 123 Ill. 2d 95, 108, 525 N.E.2d 73, 78 (1988).  

Hartmarx contends that the regulation regarding the throwback rule for a unitary business group improperly limits the scope of section 502(e).  The Department's regulations have the force and effect of law and are construed under the same standards for construing a statute.  
Tivoli Enterprises, Inc. v. Zehnder
, 297 Ill. App. 3d 125, 132, 696 N.E.2d 1202, 1206 (1998).  This court gives the statutory language its plain and ordinary meaning, evaluating the statute as a whole, with each provision construed in connection with every other section.  
Tivoli Enterprises, Inc.
, 297 Ill. App. 3d at 132, 696 N.E.2d at 1207.  Having rejected Hartmarx's interpretation of section 502(e), we similarly conclude that the argument that the regulation limits the section's scope is unpersuasive.

Hartmarx argues that the change in the last sentence of section 502(e) did not warrant the Department's change in its interpretation of the legislation from the proposed version to the final regulation.  Hartmarx first raises this argument in its reply brief, resulting in waiver on appeal.  Moreover, the persuasive value of a tax regulation that is proposed but not enacted is dubious at best.  See 
In re Estate of Miller
, 230 Ill. App. 3d 141, 147, 595 N.E.2d 630, 634 (1992).  In addition, it is not unprecedented for an agency to publish a proposed regulation for public comment and to later promulgate a different regulation after receiving comment.  The fact that the final regulation differed from the proposed regulation does not require the conclusion that the final regulation is unreasonable or incompatible with the Tax Act.
(footnote: 2)  

In sum, Hartmarx has failed to show in this case that the Department's final regulation is unreasonable or improperly limited or extended the scope of the statute.

V

Hartmarx argues that the Director's decision contravenes the basic principle underlying the unitary business concept and invites multistate taxpayers to avoid taxation in Illinois by liquidating subsidiaries and continue their operation as divisions of the corporation.  In so arguing, Hartmarx fails to address this court's prior decision in 
Beatrice
, which rejected this argument.  See 
Beatrice Companies, Inc.
, 292 Ill. App. 3d at 537-38, 685 N.E.2d at 962.

Moreover, as Hartmarx itself notes, liquidating its subsidiaries and continuing their operations as divisions of Hartmarx could reduce its tax liability in Illinois
(footnote: 3), but would subject the sales at issue to taxation in the destination States.  Such a result is not necessarily inconsistent with the overall purpose of the Tax Act as stated by our supreme court.  Thus, Hartmarx's argument on this point is not persuasive.

VI

Hartmarx further argues that basic rules of fundamental fairness prohibit the Department from selective application of the throwback rule.  During the consolidated hearing on Hartmarx's protests, Hartmarx introduced evidence that in 1995, it submitted amended returns for 1988, 1989 and 1991 to carry back a loss sustained in the 1992 tax year, adjusting the numerator of the sales factor consistent with the Department's application of the throwback rule.  Hartmarx also introduced evidence that on April 8, 1996, the Department issued a letter stating that Hartmarx's claims for refunds in tax years 1989 and 1990 would be denied and that said denial would become final in 60 days unless the claimant filed a written protest.  The record contains a written protest by Hartmarx dated May 22, 1996.

The only citation by Hartmarx supporting its argument is a circuit court decision in another case.  It is axiomatic that a circuit court decision is not binding on this court.  Moreover, Hartmarx has not shown where this circuit court decision appears in the record on appeal, raising the prospect that it was not tendered to the trial court in this case.  In addition, Hartmarx has not provided a copy of the decision to this court, which precludes this court from determining whether it might be  persuasive authority.  Hartmarx has waived the argument.

Moreover, Hartmarx, by timely filing a written protest, prevented the Department's denial of refunds from becoming final.  Hartmarx has failed to show that the Department has rendered a final decision regarding Hartmarx's refund claims that represents an inconsistent application of the law.  Thus, Hartmarx has failed to show that this claim is ripe for adjudication.

VII

Finally, Hartmarx argues that the penalties assessed for tax years 1988-90 should be abated.  Hartmarx first argues that the penalties assessed for tax year 1989 should be abated because the record shows that Hartmarx overpaid its taxes for that year.  The Department does not challenge this claim on its merits.  Rather, the Department claims that the Hartmarx failed to raise or develop the issue in the administrative proceedings and notes that Hartmarx did not seek a refund on that basis.

The record shows that Hartmarx raised the issue in its protest and in its complaint for administrative review.  The Department has not shown that Hartmarx was required to seek a refund based on overpayment to preserve the question of whether penalties were properly assessed.  Thus, the question is not waived.  Given the Department's lack of response on the merits, we conclude that penalties were improper for tax year 1989.

As for tax years 1988 and 1990, Hartmarx contends that the penalty provision of section 1005(a) of the Tax Act (35 ILCS 5/1005(a) (West 1996)) does not apply when the taxpayer had reasonable cause for underpayment.  However, the claims of reasonable cause here are almost entirely based on the arguments that we have concluded are not persuasive.

The sole new argument Hartmarx raises is based on the Department's failure to propose a penalty for tax year 1987.  Hartmarx does not show the Department erred in failing to propose a penalty for 1987, or that the effective date of the regulation -- October 16, 1987 -- did not affect the decision.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed, with the exception of the decision to impose penalties for tax year 1989, which is reversed.  The case is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

ZWICK, P.J., and O'BRIEN, J., concur.

FOOTNOTES
1:  In addressing combined apportionment, however, the legislature rejected worldwide combined apportionment and adopted a domestic version which excludes from the unitary business group any member whose activities are carried on primarily outside of the United States.  
General Telephone Co. of Illinois
, 103 Ill. 2d at 372-73, 469 N.E.2d at 1072.

2:  We note that Hartmarx cited a decision of California's State Board of Equalization (SBE) in the circuit court.  The parties also moved to cite SBE decisions and California trial court decisions as supplemental authority. We note that the California State Board of Equalization (SBE) initially took a position that would be in accord with the position taken by the Department in this case.  See 
Appeal of Joyce, Inc.
, (Cal. SBE Nov. 23, 1986).  The SBE later took a position that would be in accord with the position taken by Hartmarx.  See 
Appeal of Finnegan Corp.
 (Cal. SBE Jan. 24, 1990).  In 1999, the SBE returned to its original position.  See 
Appeal of Huffy Corp.
, (Cal. SBE April 22, 1999).  

In 
Huffy
, the SBE stated that the Multistate Tax Commission Review for January 1997 indicated that 15 state tax authorities had endorsed the SBE's original position which was approved by the Multistate Tax Commission and that the SBE's later position in 
Finnegan
 was a minority view.  The SBE also stated in 
Huffy
 that other States had endorsed the SBE's original position since the Multistate Tax Commission Review of January 1997.  Regardless of the SBE's ultimate position on the merits of this issue, which does not bind this court, the above material tends to suggest that reasonable people may differ on the appropriate rule.

3:  Whether liquidating subsidiaries would in fact reduce tax liability in Illinois would depend on a number of factors not before this court in this case.