# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Witte Brothers Exchange, Inc. v. Department of Revenue*, 2013 IL App (1st) 120850

| | |
|---|---|
| Appellate Court Caption | WITTE BROTHERS EXCHANGE, INCORPORATED, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, BRIAN HAMER, as Director of Revenue, and DAN RUTHERFORD, as Treasurer of the State of Illinois, Defendants-Appellants. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-0850 |
| Filed | September 30, 2013 |
| Rehearing denied | November 1, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an income tax audit of plaintiff interstate trucking company, the appellate court reversed the trial court's determination that the Department of Revenue could not tax the company's "pass-through" miles, the miles driven through Illinois without picking up or delivering goods, in apportioning the company's income to Illinois, since plaintiff's trucks and employees had a physical and economic presence in Illinois while passing through; therefore, the pass-through miles were "in this State" for purposes of the Income Tax Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-50282; the Hon. Robert Lopez Cepero, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellants.

David M. Rownd and Brittany E. Kirk, both of Thompson Coburn LLP, of Chicago, for appellee.

Panel

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff-appellee Witte Brothers Exchange, Inc. (Witte Brothers or plaintiff), an interstate trucking company, initiated this action against defendants-appellants the Illinois Department of Revenue, Brian Hamer as its director, and Dan Rutherford as Treasurer of the State of Illinois (collectively the Department) to recover funds submitted under protest following an audit during which the Department concluded Witte Brothers failed to include in the numerator of its apportionment factor the miles driven through Illinois without picking up or delivering goods, otherwise known as pass-through miles.[1] The trial court granted plaintiff's motion for summary determination and concluded the Department could not tax pass-through miles under section 304(d)(1) of the Illinois Income Tax Act (Tax Act) (35 ILCS 5/304(d)(1) (West 2010)). The Department appeals, contending the trial court erred in granting summary determination because the language of section 304(d)(1) demonstrates pass-through miles are revenue miles "in this State," and thus the appropriate taxes were assessed in this matter. For the reasons which follow, we reverse the determination of the trial court.

¶ 2                              BACKGROUND

¶ 3    In 2009, the Department audited plaintiff for the tax years ending September 30, 2005, September 30, 2006, and September 30, 2007. On December 7, 2009, the Department forwarded to plaintiff a notice of proposed deficiency which stated plaintiff owed $77,281 in unpaid income tax plus a penalty of $11,592 because plaintiff failed to include pass-

---

[1] "In apportioning the income of multistate, unitary businesses operating within this state, Illinois uses a formula approach known as 'formula apportionment.' Under this system, the income of the business is calculated, and a formula is applied to apportion that sum based upon the ratio of the taxpayer's activities in Illinois to its activities everywhere." *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 274 (1998).

through miles in the numerator of the apportionment factor as required in section 304(d)(1) of the Tax Act. The relevant portion of section 304(d)(1) states:

"Such business income (other than that derived from transportation by pipeline) shall be apportioned to this State by multiplying such income by a fraction, *the numerator of which is the revenue miles of the person in this State*, and the denominator of which is the revenue miles of the person everywhere. For purposes of this paragraph, a revenue mile is the transportation of 1 passenger or 1 net ton of freight the distance of 1 mile for a consideration." (Emphasis added.) 35 ILCS 5/304(d)(1) (West 2010).

¶ 4    On January 31, 2011, the Informal Conference Board rendered its decision that no amendments would be made to the plaintiff's proposed tax adjustment. The decision stated:

"The ICB concludes the following: 1. In that Witte Bros. Exchange, Inc. is carrying on its interstate transportation service business in Illinois when passing through Illinois, via Illinois highways, every Illinois 'pass-through mile' has nexus with Illinois. The requisite nexus is supplied if a corporation avails itself of the substantial privilege of carrying on business within the taxing state. [Citation.] Traversing Illinois, via Illinois highways, without an Illinois pick-up or delivery is the exercise of that privilege. 2. In that Witte Bros. Exchange, Inc. derived income from its customers while hauling freight across Illinois, its Illinois 'pass-through miles' are 'revenue miles of the person in this State' and are included in the Witte Bros. Exchange, Inc. transportation apportionment factor numerator as required by 35 ILCS 5/304(d)(1)."

¶ 5    On February 8, 2011, the Department forwarded to plaintiff a notice of audit results requesting payment of $77,282 in unpaid taxes, $35,836 in interest, and $23,185 in penalties for a total payment of $136,303. Plaintiff timely paid the assessment, but did so under protest.

¶ 6    On March 16, 2011, plaintiff filed a complaint in the law division of the circuit court of Cook County against the Department pursuant to the State Officers and Employees Money Disposition Act (Protest Monies Act) (30 ILCS 230/1 *et seq.* (West 2010)). Plaintiff sought a preliminary injunction, abatement of penalty fees and interest, a determination that the income tax was erroneously assessed, and a declaration that the Tax Delinquency Amnesty Act (35 ILCS 745/3-1 *et seq.* (West 2010)) is unconstitutional.[2]

¶ 7    The trial court granted plaintiff a preliminary injunction restraining the Department from transferring plaintiff's payment out of the protest fund pending a final disposition in the case. Plaintiff then filed a motion for summary determination pursuant to section 2-1005(d) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(d) (West 2010)) seeking a ruling on whether the Department used the proper method to calculate its Illinois tax liability. Relying on *Northwest Airlines, Inc. v. Department of Revenue*, 295 Ill. App. 3d 889, 894 (1998),

---

[2]Plaintiff filed a supplemental complaint pursuant to the Protest Monies Act regarding an additional payment of $5,600 it was required to pay by the Department. The supplemental complaint contained two additional counts: a request for an injunction, which was granted; and a claim asserting section 3-3(b-20)(2) of the Uniform Penalty and Interest Act (35 ILCS 735/3-3(b-20)(2) (West 2010)) is unconstitutional, which was withdrawn.

which ruled an airline was not required to pay taxes under section 304(d)(1) when its airplanes did not depart or land in Illinois, but merely flew over the state, plaintiff maintained these flyover miles were identical to pass-through miles and therefore plaintiff correctly excluded these miles from the numerator of the apportionment factor. In comparing flyover miles to pass-through miles, plaintiff argued the logical result is that airplanes, which do not take off from or land in Illinois, are not taxed for flyover miles. Therefore, plaintiff concluded, trucks which do not pick up or deliver goods in Illinois should not be taxed on pass-through miles. Plaintiff further argued the Illinois General Assembly's 2007 amendment of section 304 of the Tax Act supports the argument that pass-through miles were not intended to be included in the numerator of the apportionment factor for taxes incurred prior to December 31, 2008, because the General Assembly added section 304(d)(3), which expressly included pass-through miles as miles driven in Illinois after December 31, 2008.

¶ 8   In response, the Department contended Illinois pass-through miles must be included in the numerator of the apportionment factor because the statute provides the numerator shall be "the revenue miles of the person in this State." 35 ILCS 5/304(d)(1) (West 2010). A "revenue mile" is defined by the statute as the "transportation of 1 passenger or 1 net ton of freight the distance of 1 mile for a consideration." *Id.* The Department argued the purpose of section 304(d)(1) is to apportion to Illinois that part of a multistate taxpayer's income reflecting the amount of income earned in Illinois over the amount of income earned everywhere. Excluding pass-through miles would create "nowhere income," which is essentially income that is taxed by no state and would be contrary to the goal of full apportionment. The Department distinguished the holding in *Northwest Airlines*, arguing the case was considered on constitutional grounds and not based on the statutory construction of section 304(d)(1). Lastly, the Department contended the amendments to section 304 were clarifications and any other interpretation would be contrary to full apportionment.

¶ 9   In reply, plaintiff asserted the General Assembly created two distinct formulas when amending section 304 to include section 304(d)(3). Therefore, plaintiff argued, it is against statutory construction and impossible for section 304(d)(1) and section 304(d)(3) to have the same interpretation.

¶ 10   After the matter was fully briefed, the trial court set plaintiff's motion for summary determination for oral argument. On the date of hearing, the trial court extended the briefing schedule, allowing both parties to file a supplemental response and supplemental reply.[3]

¶ 11   The Department's sur-response indicated the trial court instructed the parties to address the meaning of the phrase "in this State." The Department responded "in this State" is not defined and therefore should be given its plain and ordinary meaning. It concluded, "in this State" means miles driven on Illinois roads. Further, the Department compared the Tax Act's use of "in this State" to other statutes which use the same phrase and determined all mean "in Illinois."

¶ 12   Plaintiff's sur-reply contended "in this State" is a modifier for the phrase preceding it,

---

[3]No record of proceedings for any of the trial court hearings was included in the record on appeal.

"revenue miles of the person." Thus, the question is not whether the trucks traveled "in this State," but whether plaintiff derived revenue from the pass-through miles. Plaintiff stated the concept of "revenue miles" in section 304(d)(1) applies only when the taxpayer is required to come into the state to pick up or deliver goods. Plaintiff included these miles in the numerator of the apportionment factor.

¶ 13    On February 16, 2012, the trial court entered an order granting plaintiff's motion and stating "the Illinois Department of Revenue cannot tax Pass-through Miles under 35 ILCS 5/304(d)(1)." The preliminary injunction orders were dissolved and the State Treasurer was directed to return plaintiff's funds submitted under protest. The trial court order was stayed pending appeal. On March 15, 2012, the Department timely filed this appeal. We have jurisdiction pursuant to Illinois Supreme Court Rule 301. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994).

¶ 14                                    DISCUSSION
¶ 15                    I. Interpretation of Section 304(d)(1) of the Tax Act
¶ 16    On appeal, the Department contends it correctly included plaintiff's pass-through miles in the numerator of the apportionment factor as set forth in section 304(d)(1) because pass-through miles constitute revenue miles "in this State." 35 ILCS 5/304(d)(1) (West 2010). We review questions of law and statutory construction *de novo*. *Northwest Airlines*, 295 Ill. App. 3d at 892; *National City Corp. & Subsidiaries v. Department of Revenue*, 366 Ill. App. 3d 37, 39 (2006). *De novo* consideration means we perform the same analysis that a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 17    "Tax laws must be strictly construed; they must be given a reasonable construction, without bias or prejudice against either the State or the taxpayer, in order to effectuate the intent of the legislature." *Northwest Airlines*, 295 Ill. App. 3d at 892. Where there is doubt, the statute is " 'construed most strongly against the government and in favor of the taxpayer.' " *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202 (1989) (quoting *Mahon v. Nudelman*, 377 Ill. 331, 335 (1941)).

¶ 18    We begin by looking to the language of the statute, as this is the clearest indicator of the legislature's intent. *Northwest Airlines*, 295 Ill. App. 3d at 892. "If the language is clear and unambiguous, the statute will be construed according to its terms, without resorting to aids of construction." *Id.* We must give the statutory language "its plain, ordinary, and popularly understood meaning." *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008).

¶ 19    For taxable years ending before December 31, 2008, the Tax Act requires business income derived from furnishing transportation services be apportioned in the following manner:

> "Such business income (other than that derived from transportation by pipeline) shall be apportioned to this State by multiplying such income by a fraction, *the numerator of which is the revenue miles of the person in this State*, and the denominator of which is the revenue miles of the person everywhere. For purposes of this paragraph, a revenue mile is the transportation of 1 passenger or 1 net ton of freight the distance of 1 mile for a consideration. Where a person is engaged in the transportation of both passengers and freight, the fraction above referred to shall be determined by means of an average of the

-5-

passenger revenue mile fraction and the freight revenue mile fraction, weighted to reflect the person's

> (A) relative railway operating income from total passenger and total freight service, as reported to the Interstate Commerce Commission, in the case of transportation by railroad, and

> (B) relative gross receipts from passenger and freight transportation, in case of transportation other than by railroad." (Emphasis added.) 35 ILCS 5/304(d)(1) (West 2010).

¶ 20    This court has twice issued opinions considering the language of section 304(d) as it relates to the type of miles it includes. At the time the trial court determined pass-through miles cannot be taxed under section 304(d)(1), the only case law construing section 304(d) was *Northwest Airlines*, 295 Ill. App. 3d at 889. In *Northwest Airlines*, we considered whether section 304(d)(1) provided that flyover miles must be included in the numerator of the apportionment factor. *Id.* at 892. There, Northwest Airlines contested the Department's adjustment of the tax owed to include airplane travel miles not involving takeoff or landing, that is to say, miles flown over Illinois. *Id.* at 891. The Department argued flyover miles were included in the apportionment factor as they flew in Illinois airspace and this interpretation facilitated 100% apportionment of taxes and was not preempted by federal law or a violation of the commerce clause. *Id.* In construing "in this State" the *Northwest Airlines* court stated:

> "[T]he circuit court initially determined that, had the legislature intended to include flyover miles in the apportionment numerator, it would have used the appropriate language–'above' Illinois, 'over' Illinois, or 'in [Illinois] air space.' Since the legislature sought to include only those revenue miles 'in' Illinois, the court concluded that flyover miles should be excluded. However, as the Department correctly argues, all the airline mileage at issue here is necessarily 'over' this state, 'above' this state, or 'in [Illinois] air space.' Thus, it is erroneous to conclude that flyover miles should be excluded simply on the basis of an 'in' versus 'over' analysis." (Emphasis omitted.) *Id.* at 892-93.

¶ 21    The *Northwest Airlines* court went on to consider whether the statute, if interpreted to include flyover miles, would be unconstitutional. *Id.* at 893. It concluded an interpretation of section 304(d) which included flyover miles would violate the commerce clause as there was a "*total* absence of any nexus between the overflights and this state." (Emphasis in original.) *Id.* at 893-94 (citing *GTE Automatic Electric, Inc. v. Allphin*, 68 Ill. 2d 326, 340 (1977)). Specifically:

> "[T]he nexus requirement [of the commerce clause of the United States Constitution] cannot be satisfied. Flight plans for overflights are not filed with any Illinois state or municipal authorities. There are no voice communications with overflights, and such flights make no use of Illinois facilities, services, or employees. There exists no physical contact between overflights and this state, nor any economic connection. We do not find the mere possibility that an overflight will avail itself of services and facilities in this state in the event of an unscheduled landing sufficient to establish a nexus." *Id.* at 894.

¶ 22    Subsequent to the trial court's determination, we issued *Panhandle Eastern Pipeline Co. v. Hamer*, 2012 IL App (1st) 113559. In *Panhandle*, we considered the related issue of

whether section 304(d)(2) included "flow-through" miles of natural gas in the numerator of the apportionment factor. *Id.* ¶ 22. Section 304(d)(2) uses substantially similar language as section 304(d)(1) to determine the apportionment factor:

> "Such business derived from transportation by pipeline shall be apportioned to this State by multiplying such income by a fraction, *the numerator of which is the revenue miles of the person in this State*, and the denominator of which is the revenue miles of the person everywhere. For the purposes of this paragraph, a revenue mile is the transportation by pipeline of 1 barrel of oil, 1,000 cubic feet of gas, or of any specified quantity of any other substance, the distance of 1 mile for a consideration." (Emphasis added.) 35 ILCS 5/304(d)(2) (West 2010).

The Department of Revenue argued flow-through gas miles were properly included in the numerator of the apportionment factor, whereas Panhandle contended flow-through miles were not "in this State" because the gas originated and terminated outside of Illinois. *Panhandle*, 2012 IL App (1st) 113559 ¶ 26. Panhandle further argued "the word 'in' does not mean 'through,' " an argument which we stated "strains the natural meaning of the statute and its legislative purpose." *Id.* ¶¶ 30, 31. We concluded " 'in' also relates to a presence or existence. Though not confined to Illinois, plaintiffs' pipelines and the gas are present and exist in Illinois, as the flow-through miles transport natural gas by pipeline." *Id.* ¶ 30.

¶ 23    The reviewing court also distinguished *Northwest Airlines*, as the pipeline had a physical presence in Illinois whereas the airplanes, when flying over Illinois, made no physical contact with the state. *Id.* ¶ 40. Panhandle conceded it had compressor stations within Illinois, employed Illinois residents, and had permanent easements. *Id.* Due to the physical presence of the pipeline itself, plaintiffs' employees, and business operations in Illinois, we ultimately concluded flow-through miles were properly included in the numerator of the apportionment factor. *Id.* ¶ 41.[4]

¶ 24    At issue here is whether pass-through miles traveled on behalf of an interstate trucking company in Illinois without picking up or delivering goods should be included in the numerator of the apportionment factor of section 304(d)(1). The Department contends the trial court erred in determining section 304(d)(1) of the Tax Act does not allow the Department to tax pass-through miles because pass-through miles are revenue miles "in this State." 35 ILCS 5/304(d)(1) (West 2010). The Department argues "in this State" means "miles within Illinois's borders." Therefore, the miles driven by plaintiff through Illinois must be included in the numerator of the apportionment factor.

¶ 25    Plaintiff does not provide this court with a definition of "in this State." Instead, plaintiff asserts "in this State" cannot be interpreted without also examining its relationship to the phrase "revenue miles." Plaintiff maintains the trial court correctly determined section 304(d)(1) excluded pass-through miles because the plain language of the statute allows taxation only of "revenue miles," which the statute defines as "the transportation of 1 passenger or 1 net ton of freight the distance of 1 mile for a consideration." 35 ILCS

---

[4]We also analyzed whether the inclusion of flow-through miles violated the commerce clause of the United States Constitution and determined it did not. *Id.* ¶ 55.

5/304(d)(1) (West 2010). Therefore, when a truck passes through Illinois without picking up or delivering passengers or freight, there is no consideration exchanged in Illinois and, thus, it cannot be taxed on those miles.

¶ 26 Plaintiff attempts to distinguish pass-through miles from the flow-through miles that were properly included in the numerator of the apportionment factor in *Panhandle*. Plaintiff asserts flow-through miles are fixed in the land by pipelines and therefore the revenue generating activity (transporting gas) is firmly located in Illinois. Plaintiff states, on the other hand, pass-through miles are not fixed because plaintiff can decide whether or not to drive through Illinois when transporting its customer's goods.

¶ 27 We conclude plaintiff's pass-through miles establish a physical and economic presence in Illinois which must be taxed according to section 304(d)(1). Plaintiff's contention, that physical presence must be fixed within Illinois in order to be "in this State," is found nowhere in our case law. In fact, this court has previously determined the phrase "in this State" is more broadly defined to include, not only being within Illinois borders, but also having a presence or existence in Illinois. *Panhandle*, 2012 IL App (1st) 113559, ¶ 30. This broad definition encompasses not only the facts in *Panhandle*, but also plaintiff whose trucks and employees are physically present in the state as they pass-through the boundaries of Illinois. Just as the pipeline in *Panhandle* travels through Illinois, plaintiff's trucks travel through Illinois on its roadways. This is true whether or not plaintiff is picking up or delivering goods in Illinois. By utilizing the state's infrastructure and roadways, plaintiff's property and employees are physically present in Illinois. Plaintiff is also conducting the economic activity of providing shipping services involving travel through Illinois. Moreover, the record demonstrates plaintiff alleged it paid Illinois fuel tax, which indicates plaintiff engaged in additional economic activities with Illinois suppliers. This physical presence, along with an economic connection, establishes plaintiff is "in the State." See *Panhandle*, 2012 IL App (1st) 113559, ¶ 40.

¶ 28 Although the plaintiff is "in this State," plaintiff contends pass-through miles cannot be included in numerator of the apportionment factor because they are not miles generating revenue in Illinois. Plaintiff asserts the statute defines "revenue miles" as those miles traveled "for a consideration"; therefore, if there is no consideration exchanged in Illinois those miles cannot be taxed. In other words, for Illinois to collect taxes on miles driven, plaintiff must generate income from within Illinois. According to plaintiff, pass-through miles do not generate income and, thus, should not be included in the numerator of the apportionment factor.

¶ 29 As our supreme court has already determined, "the most fitting construction of section 304(d) would be to include all income earned from the business of furnishing transportation services." *Texaco-Cities Service Pipeline Co.*, 182 Ill. 2d at 276. The statute does not state, as plaintiff suggests, that revenue miles are conditioned on the taxpayer generating income from people or entities within Illinois. The statute merely requires the miles be traveled "for a consideration." 35 ILCS 5/304(d)(1) (West 2010). The plain and ordinary meaning of "consideration" is "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something, esp. to engage in a legal act." Black's Law Dictionary 347 (9th ed. 2009). When

transporting goods plaintiff receives monetary compensation in exchange for its shipment of those goods to a particular destination. In relation to plaintiff's business, the monetary compensation is the consideration. Thus, it follows, as long as plaintiff receives monetary compensation for its shipping services, pass-through miles must be included in the numerator of the apportionment factor because those miles were traveled in Illinois for a consideration.

¶ 30    Additional support for the inclusion of pass-through miles in section 304(d)(1) comes from the purpose of the Tax Act itself. "The purpose of *** article 3 of the Illinois [Income Tax] Act is to assure that 100%, and no more or no less, of the business income of a corporation doing multistate business is taxed by the States having jurisdiction to tax it." *GTE*, 68 Ill. 2d at 335. In *Panhandle* we stated the legislative purpose of section 304(d) was to allow "Illinois to collect its share of plaintiffs' income tax under the apportionment factor." *Panhandle*, 2012 IL App (1st) 113559, ¶ 32. We determined not including flow-through miles would create a gap in taxation and therefore would be contrary to the purpose of the statute. See *id.* The Department similarly maintains the inclusion of pass-through miles is necessary to avoid any gaps in taxation. We agree that this interpretation of the statute accomplishes the legislative purpose of section 304(d).

¶ 31    Plaintiff further asserts the General Assembly's addition of section 304(d)(3) indicates pass-through miles were not intended to be included by the legislature in the apportionment formula of section 304(d)(1).

¶ 32    In 2007, section 304(d) of the Tax Act was amended with the addition of a new subsection which adopted a different method for determining the apportionment factor.[5] Specifically, the apportionment calculation would no longer be based on revenue miles, but instead on gross receipts. The relevant portion of section 304(d)(3) provides:

"For taxable years ending on or after December 31, 2008, business income derived from providing transportation services other than airline services shall be apportioned to this State by using a fraction, (a) the numerator of which shall be (i) all receipts from any movement or shipment of people, goods, mail, oil, gas, or any other substance (other than by airline) that both originates and terminates in this State, plus (ii) that portion of the person's gross receipts from movements or shipments of people, goods, mail, oil, gas, or any other substance (other than by airline) that originates in one state or jurisdiction and terminates in another state or jurisdiction, that is determined by the ratio that the miles traveled in this State bears to total miles everywhere and (b) the denominator of which shall be all revenue derived from the movement or shipment of people, goods, mail, oil, gas, or any other substance (other than by airline)." 35 ILCS 5/304(d)(3) (West 2010).

¶ 33    Plaintiff contends the amendment of section 304(d) to expressly include pass-through miles in the apportionment factor demonstrates the General Assembly did not intend for the pre-existing version of section 304(d)(1) to include pass-through miles. We considered and rejected an identical argument in *Panhandle*:

---

[5]The statute was amended twice, the first amendment being effective August 16, 2007. The second and current version was effective January 11, 2008.

"While section 304(d)(3) clearly includes any flow-through miles as part of the apportionment factor for tax years 2008 and later, it does not apply to the tax years at issue in this case. Section 304(d)(3) sets forth a new calculation of the apportionment factor. The apportionment factor no longer uses 'revenue miles' as the determining figure for the apportionment factor, but instead calculates the apportionment factor based on receipts. The legislature's enactment of a new method for calculating the apportionment factor, which expressly includes flow-through miles, does not mean that flow-through miles could not have been included in the numerator under section 304(d)(2). Section 304(d)(3)'s formula for calculating the apportionment factor has no effect on our construction of section 304(d)(2). Just because section 304(d)(3) specifically provides for the inclusion of flow-through miles, it does not follow that section 304(d)(2)'s apportionment factor excluded the miles." *Panhandle*, 2012 IL App (1st) 113559, ¶ 36.

Just as we determined flow-through miles were included in section 304(d)(3) in *Panhandle*, so too do the parties here admit section 304(d)(3) includes pass-through miles in the numerator of the apportionment factor. As in *Panhandle*, section 304(d)(3) does not apply to the present case because we are also addressing taxes assessed prior to 2008. As previously noted, section 304(d)(2) and section 304(d)(1) use substantially similar language. Accordingly, we will follow the conclusion of our colleagues in *Panhandle* and find the addition of section 304(d)(3) does not preclude the inclusion of pass-through miles in section 304(d)(1). See *id.*

¶ 34 For these reasons, we conclude pass-through miles are "in this State," as plaintiff's trucks and employees maintained a physical and economic presence while driving through Illinois.

¶ 35 II. Commerce Clause

¶ 36 On appeal plaintiff asks us to consider whether the inclusion of pass-through miles in the numerator of the apportionment factor would violate the commerce clause of the United States Constitution (U.S. Const., art. I, § 8, cl. 3). As plaintiff informed the trial court in a footnote to its motion for summary determination, if the trial court ruled in its favor on the issue of whether pass-through miles should be included in the numerator of the apportionment factor, then the court need not consider the commerce clause issue.[6] The trial court, thus, did not address or determine this issue. Although the plaintiff mentioned this contention in a paragraph of the complaint, plaintiff failed to allege a commerce clause violation as a count. Additionally, neither party set forth any arguments regarding the commerce clause violation during the hearing on the motion for summary determination. Only on appeal did plaintiff fully address and argue that section 304(d)(1) violates the commerce clause. In reply, the Department maintains we do not need to consider this issue,

---

[6]This same footnote also stated the issue of whether plaintiff would be assessed tax penalties would be moot if the trial court ruled in its favor. This issue was not addressed on appeal. Plaintiff further failed to address count V of its complaint regarding the constitutionality of the Tax Delinquency Amnesty Act (35 ILCS 735/3-1 *et seq.* (West 2010)) in the trial court and also on appeal.

as the trial court only addressed the statutory interpretation of section 304(d)(1).

¶ 37    "It has frequently been held that the theory upon which a case is tried in the lower court cannot be changed on review, and that an issue not presented to or considered by the trial court cannot be raised for the first time on review." *Kravis v. Smith Marine, Inc.*, 60 Ill. 2d 141, 147 (1975). This rule is applicable to constitutional issues. *Forest Preserve District v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 27. Because of plaintiff's failure to sufficiently raise the issue in the trial court, this court declines to address it on appeal.

¶ 38                                                    CONCLUSION

¶ 39    For the aforementioned reasons, we reverse the determination of the trial court. The matter is remanded in accordance with this opinion.

¶ 40    Reversed and remanded.